### PEAKE and others *vs.* LABAW and wife.

A mere accommodation note or accommodation endorsement by a married woman, is not sufficient to create a charge upon her separate estate.

---

This cause was heard upon bill and answer. The object of the bill was to charge upon the separate estate of the defendant, Hester J. LaBaw, the amount due upon a promissory note given by her husband, and which she endorsed at his request. She made no other contract, and did no other act than simply to write her name on the note of her husband, at his request, when alone with him at their home. She was not told for what purpose the note was to be used, or to whom it was to be passed.

*Mr. Magie,* for complainants.

The bill in this cause is filed by the complainants, merchants in New York, upon a promissory note made by Francis LaBaw to his own order, dated July 12th, 1869, for $900, payable two months after date, endorsed by Francis LaBaw, and Hester J. LaBaw, his wife.

The object of the bill is to charge upon the separate estate of Mrs. LaBaw the payment of the note so endorsed by her, which was not paid, and was duly protested, and notice given defendants.

The bill charges, and the answer admits the following facts: That Francis LaBaw was largely indebted to complainants; that Hester J. LaBaw was, at the time of endorsing the note, and is now the owner of separate estate, some of which is particularly set out in the bill, held by her under the act of 1852, commonly called the married women's act; that Francis LaBaw procured his wife to endorse this note for his accommodation, and for the purpose of transferring it to the complainants; that he delivered it to the complainants to take up his own two checks, then over due and protested, and which were given to complainants by him for money or credit loaned. The answer claims further, that neither at or before the making or endorsing of the note, or at or before the delivery of it to complainants, were any words used, either between themselves, or between them and the complainants, indicating any intention on the part of Hester J. LaBaw to charge her separate estate with the payment of the note she endorsed. Since this part of the answer is responsive, and the note was delivered to one of the complainants *alone,* the case is set down on bill and answer.

The power of the Court of Chancery to charge upon the separate estate of married women, the payment of certain claims, is well established. That power has been held to extend to estates created under the act of 1852, in the same manner as to estates held in trust for the separate use of a

married woman at common law. *Wheaton* v. *Phillips*, 1 *Beas.* 221; *Johnson* v. *Cummins*, 1 *C. E. Green* 105.

The jurisdiction of this court in such cases cannot be questioned, unless it may be said to be taken away by a remedy being provided at law, by act of 1862. *Nix. Dig.* 548. Such a remedy is provided as to debts contracted by a married woman, in the purchase of property, or transaction of business by her. *Eckert* v. *Reuter*, 4 *Vroom* 266.

But in this case, no *such* debt was contracted. The endorsement was for accommodation. In the case of *Vankirk* v. *Skillman*, decided by the Supreme Court, at February Term, 1870, opinion by Chief Justice Beasley, the action was against a married woman, upon her accommodation endorsement of a promissory note; and the court held, that the case was not within the law of 1862; that an accommodation endorsement was not such a debt as, by the terms of that statute, could be the foundation of an action at law against a married woman.

The Supreme Court having, in an exactly similar case, declined jurisdiction, and denied that an action could be brought at law, it is plain there can be no objection to the jurisdiction of this court in this cause, upon the act of 1862.

Again: the answer admits, that at the filing of the bill, Francis LaBaw had been adjudged to be a bankrupt. Under the act of 1862, a suit at law on this note would involve a claim on him, and a judgment against him. *Quære.* Could such a suit have been brought after he was adjudged bankrupt? Would not the injunction of that court have been properly used to restrain it? To this bill, which is a proceeding not *in personam*, but *in rem*, against Mrs. LaBaw's separate estate, no such objection can be made.

The effect of the act of 1852 having been to cause a large proportion of the property of the state to be placed in the hands of married women, it has seemed a matter of policy to extend the remedies against them. This is shown in the cases in this court, to which reference will be hereafter made, particularly the case of *Wheaton* v. *Phillips*, 1

*Beas.* 221. It is further shown by the act of the legislature of 1862, making married women liable to an action at law for certain contracts and engagements. And it is respectfully submitted that this case at once shows that not only equity and good conscience, but a sound public policy, require that 'all the remedies against married women, which can be shown to be within established principles, should not only be retained but liberally administered; the remedy applied for in this case, can be shown to be within established principles.

I. A married woman, by making or endorsing a promissory note, by implication equitably charges her separate estate with its payment, without any words expressly referring to her separate estate.

If there can be any charge created by her upon her separate estate, it is unreasonable that the making or endorsing of a note which can be paid in no other way, should not be held to be such a charge.

For some time the jurisdiction of courts of equity in such cases was put upon the ground that a married woman's contract or engagement was an equitable appointment of her separate property to pay it. That notion is now exploded, and it is held now to be a contract, not enforceable at law, nor personally, but equitably upon her separate estate. In the words of Chancellor Green, (*Johnson* v. *Cummins,* 1 *C. E. Green* 105) : "The jurisdiction in this state is not on the ground of the married -woman's estate being an equitable estate, but on the ground of its being *her separate estate, equitably subject to contracts entered into by her,* which are not binding upon her personally, and which cannot be enforced at law." Upon this principle, which accords with all the recent authorities, no express charge is necessary, but separate estate being proved, and a contract, not enforceable in any other way, then the court obtains jurisdiction by the implied charge upon the separate estate. 2 *Story's Eq. Jur.,* §§ 1399, 1400, and notes 1 and 2, 1401.

In the last section the following language is used : "If she gives a promissory note, or an acceptance, or a bond to pay her own debt, or joins in a bond with her husband to pay his debt, the decisions have gone the length of charging it on her separate estate, without any distinct circumstance establishing her intention." *Willard's Eq. Jur.*, p. 651 ; *Schouler on Domestic Relations*, pp. 220, 221, 222 and 224.

In England, this doctrine has been well settled since the leading case of *Hulme* v. *Tenant*, 1 *White & Tudor's L. C.* 501, marg. p. 394. See also the large number of cases to the same effect, on p. 509, marg. p. 404 ; and particularly, *Crosby* v. *Church*, 3 *Beav.* 485, 489 ; *Bullpin* v. *Clark*, 17 *Ves.* 365 ; *Owens* v. *Dickenson*, 1 *Cr. & Phil.* 48.

In the last case, Lord Cottenham used the following language : " The holder of her (a married woman's) promissory note has her contract, which equity considers her capable of entering into ; and it would be a very strong proposition to say that when she has, by an instrument under her hand, acknowledged her debt and promised to pay it, she is not considered as creating an obligation to bind her." See also, *Vaughan* v. *Vanderstegen*, 2 *Drewry* 165 ; *Shattock* v. *Shattock, Law Rep.*, 2 *Eq.* 182. In this case Lord Romilly used this language : " There are two classes of cases : first, where a married woman has an absolute interest in the property settled to separate use ; secondly,     *      *      *      * In the former case the law now, as administered by the courts of equity, seems to be settled to this extent : that her separate property will be liable to pay any debts of hers which she has secured by writing, the courts holding, that giving such a writing must have a meaning, and that unless the meaning be to charge her separate estate there is no meaning whatever in the writing, which is a mere piece of waste paper." See, also, *Mrs. Matthewman's Case, Law Rep.*, 3 *Eq.* 781 ; *Murray* v. *Barlee*, 4 *Sim.* 82 ; 3 *Mylne & Keene* 220, &c. The language of Lord Brougham in this

case, is quoted in support of this doctrine in 1 *White & Tudor's L. C.*, p. 511, marg. p. 406 and 407.

In Hare & Wallace's Notes, 1 *White & Tudor's L. C.* 533 and 534, are numbers of American cases taking this ground, and reference is particularly made to the well considered cases in Kentucky, quoted on page 534 and *seq.*

In New Jersey the following cases seem to involve the same principle :

. *Leaycraft* v. *Hedden,* 3 *Green's Ch.* 512. In this case the bill was filed on a bond of the trustee of a married woman, made for her. It had originally been secured by a mortgage, but the mortgaged premises being sold under foreclosure, there was not enough realized to pay the bond, and the bill was filed to charge the separate estate of the married woman with the payment of the balance, and it was so decreed. This clearly involved the principle. . The mortgage of part of her separate property, was evidence that she did not intend to charge *expressly* all her separate property. That was charged simply by implication from the making of the bond.

. *Pentz* v. *Simonson,* 2 *Beas.* 232, was a case of money paid to a married woman on her contract to sell some of her separate estate. Court refused to compel her specifically to perform the contract, but held that her separate estate was liable for repayment of the money paid. On page 236, Chancellor Green says : "She is in equity as much bound to repay the sum thus advanced as though she had given her bond or note for the repayment of the money." The charge upon the separate estate was wholly by implication.

*Wheaton* v. *Phillips,* 1 *Beas.* 221. Chancellor Williamson held that a married woman's general debts, contracted in her own business, were charged on her separate estate.

*Johnson* v. *Cummins,* 1 *C. E. Green* 97, where the debt was contracted for the benefit of her own estate, Chancellor Green held "that equity will, in such a case, charge the estate of a *feme covert, without any express appropriation*

*of her estate, or any part of it, to the payment of the debt;"* and " that all that is necessary to bind the separate estate is that it appears that the engagement was made in reference to the estate, or upon the faith and credit of her estate." p. 104.

The last case establishes, in this court, the law, that a charge on a married woman's separate estate will arise without any express words; certainly, whenever her engagements were for her own benefit or benefit of her estate, or on *the credit of her estate.*

II. A married woman, by endorsing a note for the accommodation of her husband, by implication charges her separate estate.

This follows, I submit, as a necessary consequence, from the principle on which equity acquires jurisdiction in such cases, *viz.* that in no other way can her engagement be enforced. Unless conceded, a long and well established privilege of a married woman, in respect to her separate property, is taken away from her. It has long ago been held *that a wife may give her separate estate to her husband.* See cases cited in 1 *White & Tudor's L. C.* 515, marg. pp. 411 and 412.

So, in *Jaques* v. *Methodist Episcopal Church,* 17 *Johns.* 548, it was held that a married woman might dispose of her property to her husband, so that her disposition of it was free and not the result of flattery, force, or improper treatment. *Hardy* v. *Van Harlinger,* 7 *Ohio N. S.* 208. And so in *Galway* v. *Fullerton,* 2 *C. E. Green* 389, it was held that a wife might mortgage her separate property to secure the debt of her husband.

It is respectfully submitted that no reason can be assigned for restricting the wife's power to select her own way of disposing of her property for her husband's benefit; provided always, she be not under any coercion from him. And it is suggested that the reason why the legislature, in giving an action at law against a married woman upon

some of her contracts, omitted contracts of suretyship, was that a court of equity might, from its peculiar powers, take care that a wife was not deceived, coerced, or defrauded in such a disposition of her property.

I insist, therefore, that the charge of an accommodation endorsement of a married woman does not differ from any charge for the benefit of her estate. Such a note is evidently *made upon* the credit of her estate, and so comes at once within the words of Chancellor Green in *Johnson* v. *Cummins*, quoted above. 2 *Story's Eq. Jur.*, § 1400; *Willard's Eq. Jur.*, p. 649; *Schouler on Dom. Rel.*, p. 225.

And such engagements of married women have been constantly enforced in the English courts of equity, beginning with the leading case of *Hulme* v. *Tenant*, where part of the bond, which was the subject of that suit, was for the husband's debt. See also cases cited in 1 *White & Tudor's L. C.* 515, marg. pp. 411 and 412.

*Field* v. *Sowle*, 4 *Russ.* 112, was a case where a wife joined in a bond for money advanced to her husband. *Stanford* v. *Marshall*, 2 *Atk.* 68, was a case of a bond for money lent the husband. *Heatley* v. *Thomas*, 15 *Ves.* 596, was a case of a bond by a married woman as surety for her husband. *Wagstaff* v. *Smith*, 9 *Ves.* 520, assignment by married woman to secure annuity to husband.

In this state, the question has not been directly decided. In *Vankirk* v. *Skillman*, decided by Supreme Court in February Term, 1870, it was assumed that a married woman's accommodation endorsement would be good in equity.

In *Oakley* v. *Pound*, 1 *McCarter* 178, a case in which Mr. F. B. Chetwood was counsel for complainants, and Chancellor Williamson for defendants, the bill was filed upon notes of a married woman, given partly for a debt of her husband owed to the complainant; no objection of this kind was made by the acute counsel for the defendant, and Chancellor Green, in his decision, though he mentioned the fact that she gave the notes for her husband's debt, never intimated that there could be any defence on that ground.

A different rule from that insisted upon above, has undoubtedly prevailed in New York since the case of *Yale* v. *Dederer*, 18 *N. Y.* 265, and 22 *N. Y.* 450. The principle of the case as last decided seems to be, that to create a charge on a married woman's separate estate, the intention to charge must appear in the contract itself, or the consideration must enure to the benefit of her separate estate. That this decision was completely at variance with the former decisions in New York, is admitted. It has not been followed elsewhere, except in Massachusetts, and the principle on which the decision was founded, has been severely criticised. See particularly *Schouler's Dom. Rel.*, pp. 229 and 230, and an able discussion by I. F. Redfield, *American Law Reg.* for 1861 and 1862, Vol. 1, N. S., p. 665.

But this case of *Yale* v. *Dederer*, seems to be cited with favor in *Armstrong* v. *Ross*, 5 *C. E. Green* 109. I submit, however, that nothing in the case of *Armstrong* v. *Ross*, intimates that the Court of Chancery is disposed to adopt all the rulings of the case of *Yale* v. *Dederer*. To so much of it as is contained in the first proposition assumed as settled by the Chancellor, no objection can be made. But I insist, that while it is true that a married woman's debts contracted for the benefit of, or on the credit of her estate, will be charged thereon, it is equally true, that her power to devote her estate to her husband's advancement (always excepting the case of coercion on his part), and her doing so, by the making or endorsing of a note for his benefit, which note can be paid in no other way than by being charged on her separate property, have never yet been denied, and I believe never will be denied by a court of equity in New Jersey. To limit her liability in this direction is, I submit, what the legislature has never undertaken to do; and since that power has been, as I believe is shown above, exercised for a long series of years, no court should undertake to limit it, until some legislative restriction is put upon it.

As to the other branch of the Yale and Dederer decision, *viz.* that the intention to charge must appear in the contract

itself, it is so contrary to the numerous decisions in New Jersey that it cannot be adopted here without a marked inconsistency. For example, it has been repeatedly decided, and even in the case of *Armstrong* v. *Ross*, that a mortgage made by a married woman, which is utterly void by reason of the husband not having joined in it, will charge, *not the mortgaged premises alone, but her separate estate in general.* The intent to charge her separate estate appears in the contract, to effect only the specific portion described in the mortgage. And yet it is held, and with manifest justice, that it should be charged upon her whole separate estate.

I submit then, that both from principle and from a great weight of authority, this court should hold that by this accommodation endorsement, Mrs. LaBaw impliedly charged her separate estate.

Some questions may arise upon the mode of relief. In the English cases, it seems admitted that the relief is by a receiver to take the profits of the separate estate and apply them to the debts.

The decree in *Yale* v. *Derderer*, 21 *Barb.* 290, ordered the separate estate sold.

The reason of the English cases seems to be, that in most cases of separate property at common law, there was a remainder to heirs, &c.

Since our act of 1852, we insist there is no reason why the *corpus* of the separate estate may not be used to pay her debts, as well as the profits. So Chancellor Green seemed to think. See *Johnson* v. *Cummins*, 1 *C. E. Green* 104, 105.

If otherwise, we are entitled to a receiver and relief from the profits, under our prayer for general relief.

*Mr. F. B. Chetwood*, for defendants.

The defendants both deny the whole equity upon which the complainants seek to charge the separate estate of the defendant, Hester J. LaBaw.

By the answer of Francis LaBaw, it appears on the 12th

Peake *v.* LaBaw.

of July, 1869, at his place of business in Rahway, he drew up the promissory note in question, of $900, and went to his dwelling-house, and asked his wife, the said Hester J. LaBaw, to endorse her name on the note for his accommodation, and she did so; and Francis LaBaw immediately upon getting the endorsement of his wife's name on the note, left his house to take the next train of cars to the city of New York, to call upon the complainants and to offer them this note; that he delivered it to W. J. Peake, one of the complainants, who accepted it; that when he delivered it to him nothing had ever been said, nor any conversation ever had, by or between him and the complainants, or any one of them, on the subject of his wife's endorsing the note, or any other note, or in any way or manner becoming security for said debt, or for him, nor on the subject of pledging, or in any manner charging her property, or any part of it, as security on said note, or for said debt, or rendering the same in any manner liable therefor. He also denies that he ever proposed to the complainants, or any of them, that his wife would charge her own property, or any part of it, with the payment of $900, or any other sum to complainants, or endorse a note for that purpose.

The defendant, Mrs. LaBaw, says she never authorized her husband to offer or say to the complainants, or any of them, or to any person, that she would charge her separate estate, or any part of it, with the payment of any sum of money to the complainants, or any of them, nor with the payment of the said promissory note of $900, or any other note; and denies that she endorsed the note in question for the purpose or object of charging her separate estate, or any part of it, with the payment of said note, or with the payment of the debt for which the note was made; and that she endorsed the note only because her husband asked her to put her name on it, without giving her any reason or stating to her any purpose for her endorsing it.

They both expressly deny that she endorsed the note for the purpose, and with the design of charging, or that she did

thereby charge her own separate estate, and the lands and premises in the bill mentioned, with the payment of the money in said note specified.

Both defendants say that Francis LaBaw never asked or proposed to his wife to pledge or charge her separate estate, or any part of it, for the payment of said note or the said debt, or any part of it, and there was never any conversation between them on the subject of her so pledging or charging her estate, or any part of it, or of her endorsing said note for the purpose, or with a view to pledge or charge her separate estate, or any part of it, with the payment of said note.

The defendant, Hester J. LaBaw, is an endorser of the note of her husband, at his request, without any interest in the consideration for which her husband made the note for his debt, and without any knowledge or information of the object or purpose, or effect of the note, and has derived no benefit therefrom, and never can derive any. She endorsed the note only because her husband asked her to put her name on it, without giving any reason for so doing. Under any circumstances in the case, she is, at most, a mere accommodation endorser.

I believe that no decision, dictum, or intimation can be found, to charge the separate estate of a married woman with the payment of the debt of her husband, upon her endorsement of his note at his request, without any other fact or circumstance connected with her endorsement beyond asking her to put her name on the note.

In this case there is no knowledge or information on the part of the wife, of the object of the note, or of her endorsement; and there is an entire absence of any intention on her part by endorsing the note, that the endorsement was made to operate in some way, or in any way, and therefore, no intention to charge her separate estate, and more especially that portion of it particularly described in the bill.

Where a wife becomes a party to an accommodation note as surety merely, her separate estate is not liable for the

Peake *v* LaBaw.

payment of it, unless she expressly charge it for that purpose. 2 *Story's Eq. Jur.*, § 1401; *Willard* v. *Eastham*, 15 *Gray* 328.

In the case of *Tullet* v. *Armstrong*, 4 *Beav.*, the judge says: " But in a case where she enters into no bond, contract, covenant, or obligation, and in no way contracts to do any act on her part; where the instrument which she executes does not purport to bind or pass any thing whatever that belongs to her; and where it must consequently be left a mere inference whether, she intended to affect her estate in any manner or way whatever, the case is entirely different either from the case where she executes a bond, promissory note, or other instrument, or where she enters into a covenant or obligation by which she, being a married woman, can be considered as binding her separate estate."

The bill was filed December 4th, 1869, and on the 29th of January, 1870, the complainants proved the note in question as a debt against Francis LaBaw, who had been previously forced into bankruptcy, and in said proof in bankruptcy one of the complainants swears that this note was endorsed by said bankrupt's wife, " but the value of such endorsement, or her responsibility therefor, this deponent is unable to state."

This does not well comport with their statements in the bill of complainant, that she has a separate estate and charged it with the payment of this note, but agrees with the answer of both defendants in relation to her responsibility therefor.

THE CHANCELLOR.

The separate estate of Mrs. Labaw was the legal title to land held by her by virtue of the married women's act. She had the legal title, and there was no trust in any one. And the only question in the case is, whether a simple endorsement of a note by a married woman is such charge upon her separate legal estate as will be enforced in equity.

Before the married women's act, legal estates in fee could be held and were held by married women. The making or endorsement of a note, or executing a bond or mortgage, could not bind it either at law or in equity, without the separate acknowledgment directed by statute. The married women's act did not, in terms, change this; it was not intended to change it. No change was required to give effect to any provision of that act. The proposition that the owner of property must have, as an incident to the ownership, the right to charge and encumber it, applied to legal estates held by married women before that act, but did not have the effect contended for.

Since the passage of that act here, and similar acts in other states, the courts have held certain contracts of married women, to create charges on their separate estates, which will be enforced in equity. This was in analogy to the doctrine of equity, by which certain contracts made by married women having estates held in trust for them, were enforced in equity as against their trust estates. Debts contracted by them were paid only out of the income of these estates for the life of the woman.

The courts of this country have declared the estates of married women held under these acts, to be liable for debts contracted by them for the benefit of these separate estates, or for their own benefit on the credit of these estates. But they go no farther than this. The Court of Appeals in New York, in the final decision in *Yale* v. *Dederer*, 22 *N. Y.* 450, holds this to be the limit of the power of a married woman to charge her estate, unless done by an instrument properly executed for that purpose. The same doctrine is held by the Supreme Court of Massachusetts in *Willard* v. *Eastham*, 15 *Gray* 328. Chancellor Green, in *Johnson* v. *Cummins*, 1 *C. E. Green* 104, says: "It must be assumed that the wife had a separate estate, which she might lawfully charge with debts created for the benefit of the estate, or for her own support and benefit;" and again, "In order to bind the estate, it must appear that the engagement was

Erie R. Co. *v.* Del., Lack. & Western, and Morris & Essex R. Cos.

made in reference to and on the faith and credit of the estate."

In the case of *Armstrong* v. *Ross*, 5 *C. E. Green* 109, this court took the same view of the subject, and although it was not declared that the estate could not be made liable in any other way, the means of making her estate liable are stated in such manner as imply that they are the limit of the power.

I am of opinion that the separate estate held under the married women's act, cannot be made liable to be charged in equity by an accommodation note, or an accommodation endorsement made by her. The courts have gone far enough in construing these acts as removing disability of coverture, and I am not willing to take another step in that direction. All the protection given by the law to a married woman on account of her disability or being under marital influence, will be taken away, if it is held that becoming security for the act of another, or signing accommodation paper, will bind and take away her separate estate.

The bill must be dismissed.